IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JERRY K. LAWSON,** : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 22-CV-3672 |
| : | |
| **CITY OF PHILADELPHIA,** *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM

**GOLDBERG, J.**                                                                   **NOVEMBER 22, 2022**

Plaintiff Jerry K. Lawson, a pretrial detainee currently confined at Curran-Fromhold Correctional Facility ("CFCF"), filed this *pro se* action alleging violations of his civil rights. Lawson also seeks leave to proceed *in forma pauperis*. Named as Defendants are: (1) the City of Philadelphia; (2) Commissioner Blanche Carney; and (3) CFCF.[1] For the following reasons, Lawson will be granted leave to proceed *in forma pauperis* and the Amended Complaint[2] will be dismissed in part with prejudice and in part without prejudice. Lawson will be given an opportunity to cure the noted deficiencies by filing a second amended complaint.

---

[1] Lawson also lists "Medical and Correctional Staffings," with the following description, "Docter's, [sic] nurses et al. Major's, Deputy Warden, Warden, Administrational Staffings et al." but does not provide identifying information for these individuals. (*See* Am. Compl. at 3.)

[2] On September 12, 2022, the Clerk of Court docketed a seven-page submission from Lawson, which consisted of copies of several prison grievances and a letter requesting forms to initiate a lawsuit. (ECF No. 1 at 1-7.) Although Lawson's submission was not a proper complaint, in an abundance of caution and in accordance with its responsibilities under Federal Rule of Civil Procedure 5, the Clerk of Court docketed Lawson's submission as a Complaint in a new civil action. By Order dated September 16, 2022, the Court directed the Clerk of Court to provide Lawson with the requested forms. (ECF No. 3.) On November 14, 2022, Lawson filed the Amended Complaint that is presently before the Court for review.

I.      **FACTUAL ALLEGATIONS**[3]

Lawson contends that while housed at CFCF during August and September 2022, he did not receive medication "for withdrawals, asthma, chronic pain, or nerve damage" "because of a "shortage of medical staff and or c/o officer's." (Am. Compl. at 4-5.) He claims that "nurses did not make sure I received medication knowing medications could not be stop[p]ed overnight without withdrawals for days and week." (*Id.* at 5.) Lawson asserts that the deprivations occurred on August 28, 2022 and August 30, 2022. (*See id.* at 4.) However, he also describes the deprivation as lasting "for 5 to 7 days." (*Id.* at 5.) He further contends that "this has happened three times in two months and still happens from time to time, I'm still not receiving all of the medications now." (*Id.*) Additionally, Lawson avers that his "hand is metacarpal fracture" and that he "still [has] not been taken to have the case or new x-rays taken." (*Id.*) According to Lawson, he "asked many nurses to ask doctors to renew my medical to end my suffering withdrawals from two medication. Ms. King, Ms. Allander, Sutton, Hilary, Ms. Olliver all nurses I've asked to have my medication renewed. Mader, Cruz, think secretary, Ms. Keys, Lt. Williams, Stg. Miller, C/O Lester, Stg. Philliphs, Lt. Lenn and all officers and nurses." (*Id.*)

Lawson also alleges "unsafe and unsanitary conditions of confinement COVID 19 Reinfected after reinfection restriction implemented inhumane condition, protection against many other constitutional violation." (*Id.*) He appears to claim that he was "housed in [a] mop closet without running water and toilet not working for many days and nights" and that he "stay[ed] in all multipurpose rooms." (*Id.*) He also seeks daily, weekly, and monthly access to the law library.

---

[3] The allegations set forth in this Memorandum are taken from Lawson's Amended Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

(*Id.*)  Lawson alleges that he has suffered physical and mental harm, and seeks monetary relief for his claims.  (*Id.*)

## II.  STANDARD OF REVIEW

The Court grants Lawson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)). Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Lawson is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "'*pro*

---

[4] However, as Lawson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

3

*se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

**III. DISCUSSION**

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Furthermore, to state a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

It is clear that Lawson is attempting to bring claims pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. However, his claims are articulated in a generalized, conclusory manner. Thus, it is difficult to determine the factual contours of what happened, when it happened, and who was involved in a given set of events. Liberally construing Lawson's Amended Complaint as this Court must, the Court understands Lawson to present claims for deliberate indifference to medical needs, regarding the conditions of his confinement, and for

4

denial of access to the courts.[5] Despite that liberal construction, Lawson has not alleged a plausible basis for a § 1983 claim against any Defendant as set forth below.

### A. Claims Against CFCF

Among the Defendants named in this action is the Philadelphia jail where the events giving rise to Lawson's claims took place, CFCF. However, a jail is not a "person" subject to liability under § 1983. *See Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Accordingly, the Court will dismiss any claims against CFCF with prejudice.

### B. Individual Capacity Claims Against Commissioner Blanche Carney

Lawson does not clearly state the basis for a claim against Defendant Carney, as he presents no factual allegations concerning her. To the extent that Lawson seeks to bring a claim against Defendant Carney for holding a supervisory position, Lawson has not stated a plausible claim. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and

---

[5] Lawson suggests that he was unable to grant his sister or wife power of attorney to use his bank account to withdraw funds to have his work truck removed from impound, because "no one notarized" his power of attorney. (*See* Am. Compl. at 5.) However, he has not tied this allegation to any named Defendant and the Court can discern no basis for a constitutional claim based on this undeveloped assertion.

maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6). Here, Lawson has failed to allege that Defendant Carney established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and he has failed to allege Defendant Carney's personal involvement in any alleged underlying constitutional violation. Accordingly, the individual capacity claims against Defendant Carney are not plausible and will be dismissed without prejudice.

      **C.**     **Official Capacity and Claims Against the City of Philadelphia**

Lawson seeks to bring claims against Defendant Carney in her official capacity as well as her individual capacity. (*See* Am. Compl. at 2.) Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Lawson also has named the City of Philadelphia as a Defendant. Thus, to the extent Defendant Carney is sued in her

official capacity, any such claims are dismissed as duplicative of the claims against the City of Philadelphia. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

A municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)), *cert. denied*, 140 S. Ct. (2019). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting

*Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").[6]

To the extent Lawson seeks damages from Defendant Carney in her official capacity, or from the City of Philadelphia, he has failed to allege facts that support *Monell* liability. Lawson has not pled a municipal policy or custom with respect to any of the alleged constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate indifference. Accordingly, the official capacity claims against Defendant Carney, as well as the claims against the City of Philadelphia, are not plausible and will be dismissed without prejudice.

D.     **Deliberate Indifference to Medical Needs**

There are other defects in Lawson's claims. He alleges that he did not receive medication "for withdrawals, asthma, chronic pain, or nerve damage" "because of a "shortage of medical staff

---

[6] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

and or c/o officer's." (Am. Compl. at 4-5.) Lawson asserts that "nurses did not make sure I received medication knowing medications could not be stop[p]ed overnight without withdrawals for days and week." (*Id.* at 5.) It is not entirely clear when the alleged deprivations occurred or how long they lasted. For instance, Lawson alleges that the deprivations occurred on August 28, 2022 and August 30, 2022. (*See id.* at 4.) However, he also avers that he did not receive medication for five to seven days. (*Id.* at 5.) He further asserts that "this has happened three times in two months and still happens from time to time, I'm still not receiving all of the medications now." (*Id.*) Additionally, Lawson contends that his "hand is metacarpal fracture" and that he "still [has] not been taken to have the case or new x-rays taken." (*Id.*) According to Lawson, he "asked many nurses to ask doctors to renew my medical to end my suffering withdrawals from two medication. Ms. King, Ms. Allander, Sutton, Hilary, Ms. Olliver all nurses I've asked to have my medication renewed. Mader, Cruz, think secretary, Ms. Keys, Lt. Williams, Stg. Miller, C/O Lester, Stg. Philliphs, Lt. Lenn and all officers and nurses." (*Id.*)

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).[7] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate

---

[7] As it appears that Lawson was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.") (internal citations and quotations omitted). Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.* Allegations of medical malpractice and mere disagreement regarding proper medical treatment, however, are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Here, the allegations in Lawson's Amended Complaint do not support a plausible Fourteenth Amendment claim under the *Iqbal* pleading standard. Lawson's allegations concerning deliberate indifference to his medical needs are undeveloped. He alleged generally that he failed to receive medical care after it was requested; however, he has not alleged that any named Defendant knew he needed medical treatment and intentionally refused, delayed, or prevented him from receiving that treatment. Additionally, although Lawson mentioned various individuals in

the Amended Complaint with regard to his deliberate indifference claims, Lawson has not tied his allegations to an individual defendant. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode*, 845 F.2d at 1207. Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 825 F.2d at 1207. Here, Lawson has not identified an individual or individuals who is alleged to have intentionally denied or delayed access to medical care, or who intentionally interfered with prescribed treatment.

Lawson's allegations as currently pled are insufficient to state a constitutional claim. Thus, Lawson's deliberate indifference to medical needs claims will be dismissed without prejudice failure to state a claim. However, because the Court cannot say at this time that Lawson is incapable of curing these defects, the claims will be dismissed without prejudice, and he will be given an opportunity to reassert the claims in an attempt to cure the defects.

   **E.**  **Conditions of Confinement**

There are also issues with Lawson's claims regarding the conditions of his confinement. Lawson appears to allege, *inter alia*, "unsafe and unsanitary conditions of confinement" related to COVID-19, as well as that he was "housed in [a] mop closet without running water and toilet not working for many days and nights" and that he "stay[ed] in all multipurpose rooms." (*See* Am. Compl. at 5.)

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees challenging their conditions of confinement. *Hubbard*, 399 F.3d at 166. To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). To satisfy the subjective component, a detainee generally must allege that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*)

("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Because Lawson's allegations are vague, conclusory, and do not provide any factual allegations pertaining to the nature or length of the alleged deprivations, the Amended Complaint does not support a plausible Fourteenth Amendment conditions of confinement claim under the *Iqbal* pleading standard. Additionally, even assuming *arguendo* that some of the allegations could be liberally construed to rise to the level of a Fourteenth Amendment claim, Lawson has not adequately tied those allegations to any of the named Defendants. *See Rode*, 845 F.2d at 1207. Accordingly, Lawson's claims based on the conditions of his confinement will be dismissed without prejudice and Lawson will be permitted the opportunity to amend his pleading if he can cure the noted defects.

### F.  Access to Law Library

The Court also understands Lawson to allege that his constitutional rights were violated when he was unable to access the law library with the frequency with which he desired. (*See* Am. Compl. at 5-6.) A claim asserting restrictions on access to the prison law library is considered an "access-to-the-courts" claim under the First Amendment. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*). Incarcerated individuals have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."). A pretrial detainee "making an access to courts claim is required to show that the denial of access caused actual injury." *Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (*per curiam*). In other words, a prisoner claiming

that a defendant denied him access to the courts must allege an injury traceable to the conditions of which the prisoner complains. *See Diaz*, 532 F. App'x at 63 (affirming district court's dismissal of *pro se* prisoner's denial of access to courts claims where prisoner failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that he lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "[t]he underlying cause of action . . . is an element that must be described in the complaint." *Id.*

Lawson has not stated a plausible access to courts claim because he has not alleged an actual injury resulting from his inability to use the law library. He has not described anywhere in his Amended Complaint what "nonfrivolous" or "arguable" claim he has lost as a result of his inability to access the law library or its materials. Without allegations of an actual injury, any claim based on the denial of his ability to use the prison law library is not plausible. *See Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (affirming district court's conclusion that there was no denial of access to the courts where inmate, *inter alia*, failed to allege what underlying nonfrivolous claims he was unable to pursue). Accordingly, Lawson's access to courts claim under the First Amendment will be dismissed.

## IV. CONCLUSION

As set forth more fully above, Lawson's § 1983 claims against CFCF will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible. Further, the Court concludes that amendment of these claims would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile.").

Because the Court cannot say at this time that Lawson cannot cure the defects in his claims for (1) deliberate indifference to serious medical needs; (2) unconstitutional conditions of confinement; and (3) denial of access to the law library, these claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Lawson will be granted the option of filing a second amended complaint to assert a plausible basis for these claims.  Any second amended complaint must clearly describe the factual basis for Lawson's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.[8]

An appropriate Order follows, which provides further instruction as to amendment.

---

[8] Any amended complaint must provide as much identifying information for the defendants as possible.  Lawson may refer to a defendant by last name only if that is the only identifying information possessed.  If Lawson wishes to name individuals for whom he does not have any identifying information, he may refer to those individuals as John Doe #1, John Doe #2, etc.